## HARSHMAN *v.* BATES COUNTY.

1. Sect. 14 of art. 11 of the Constitution of Missouri, adopted in 1865, declaring that " The general assembly shall not authorize any county, city, or town, to become a stockholder in, or to loan its credit to, any company, association, or corporation, unless two-thirds of the qualified voters of such county, city, or town, at a regular or special election to be held therein, shall assent thereto," extends as well to townships as to counties, cities, and towns.

2. Although a subscription for stock of a railroad company be duly authorized by the requisite number of the qualified voters of a township, if the company, before the subscription be actually made, becomes consolidated with another, thereby forming a third, the County Court is not empowered to subscribe, on behalf of the township, for stock of the new company, and issue bonds in payment therefor.

3. The holder of coupons attached to the bonds in question in this suit is not entitled to recover thereon, as sufficient notice of the objection to the validity of the bonds is contained in their recitals.

ERROR to the Circuit Court of the United States for the Western District of Missouri.

This is an action against the county of Bates, upon a large number of coupons originally attached to bonds issued by the County Court of that county.

The following is a copy of one of the bonds and coupons : —

" [No. 90.        UNITED STATES OF AMERICA.        [$1,000.

" STATE OF MISSOURI, *County of Bates :* —

" Issued pursuant to articles of consolidation in payment of stock due the Lexington, Lake, and Gulf Railroad Company, consolidated Oct. 4, A.D. 1870.

" Know all men by these presents, that the county of Bates, in the State of Missouri, acknowledges itself indebted and firmly bound to the Lexington, Lake, and Gulf Railroad Company, in the sum of $1,000 ; which sum the said county of Bates, for and in behalf of Mount Pleasant Township, therein promises to pay to the said Lexington, Lake, and Gulf Railroad Company, or bearer, at the Bank of America, in the City and State of New York, on the eighteenth day of January, A.D. 1886, together with the interest thereon from the eighteenth day of January, 1871, at the rate of ten per centum per annum, which interest shall be payable annually on the presentation and delivery at said Bank of America of the coupons of interest hereto attached.

" This bond being issued under and pursuant to an order of the County Court of Bates County, by virtue of an act of the general assembly of the State of Missouri, approved March 23, 1868, entitled ' An Act to facilitate the construction of railroads in the State of Missouri,' and authorized by a vote of the people taken May 3, 1870, as required by law, upon the proposition to subscribe $90,000 to the capital stock of the Lexington, Chillicothe, and Gulf Railroad Company, and which said railroad company last aforesaid and the former Pleasant Hill Division of the Lexington, Chillicothe, and Gulf Railroad Company were, on the fourth day of October, 1870, consolidated, as required by law, into one company, under the name of the Lexington, Lake, and Gulf Railroad Company ; and which said last-named railroad company, as provided by law, and under the terms of said consolidation thereof, possesses all the powers, rights, and privileges, and owns and controls all the assets, subscriptions, bonds, moneys, and properties whatever, of the two said several companies forming said consolidation, or either one of them.

" In testimony whereof, the said county of Bates has executed this bond, by the presiding justice of the County Court of said county, under the order thereof, signing his name hereto ; and the clerk of said court, under the order thereof, attesting the same, and affixing the seal of said court.

" This done at the city of Butler, county of Bates, this eighteenth day of January, A.D. 1871.

{ COUNTY COURT OF }              B. H. THORNTON,
{      [SEAL]      }         *Presiding Justice of the County Court of*
{ BATES CO., MO.   }                   *Bates County, Mo.*  ·

" Attest :—
      " W. J. SMITH,
          *Clerk of the County Court of Bates County, Mo.*

" $100.]                  *Coupon.*                  [$100.

                    "BUTLER, BATES COUNTY, MO.,
                         "Jan. 18, A.D. 1871.

" The County of Bates acknowledges to owe the sum of $100, payable to bearer on the eighteenth day of January, 1872, at the Bank of America, in the city of New York, for one year's interest on bond No. 90.

                         " W. J. SMITH,
                   " *Clerk County Court Bates County, Mo.*"

The plaintiff alleges, that, on the eighteenth day of January, 1871, the defendant issued its several bonds, by which it bound itself to pay to the Lexington, Lake, and Gulf Railroad Company, and for and on behalf of Mount Pleasant Township, in said county, $1,000, payable to said company at the Bank of America, &c., and that he is the holder of certain coupons of said bonds.

That, prior to the fifth day of April, 1870, certain tax-payers of Mount Pleasant Township petitioned the County Court of Bates County, setting forth their desire to subscribe $90,000 to the stock of the Lexington, Chillicothe, and Gulf Railroad Company : and thereupon the court ordered an election in said township, for the 3d of May, 1870 ; which was held, and two-thirds of the qualified voters of said township voting thereat voted for it.

That, on the eighteenth day of July, 1870, another corporation was formed by the name of the Pleasant Hill Division of the

Lexington, Chillicothe, and Gulf Railroad Company; and that these two corporations, one being the Lexington, Chillicothe, and Gulf Railroad Company, and the other being the Pleasant Hill Division of the Lexington, Chillicothe, and Gulf Railroad Company, were, on the fourth day of October, 1870, consolidated under the name of the Lexington, Lake, and Gulf Railroad Company.

That, thereafter — to wit, on the 18th of January, 1871 — the County Court of Bates County, in pursuance of the authority conferred upon it by the vote of the people of said township, subscribed the said sum of $90,000, in behalf of said township to said Lexington, Lake, and Gulf Railroad Company (the consolidated company); and that said bonds (to which the coupons in suit were annexed) were, among others, issued by the said court in payment for said subscription.

The defendant demurred to the petition, on the ground that it shows that the County Court had no authority in law to make the subscription recited in the bonds, or to issue the bonds in payment therefor; and because it also shows that the question of making the subscription to the new or consolidated company was never submitted to a vote of the people of Mount Pleasant Township, nor assented to by them, as required by the constitution and laws of the State. The court sustained the demurrer, and gave judgment accordingly; whereupon the case was brought here.

Argued by *Mr. T. K. Skinker* for the plaintiff in error, and submitted on printed briefs by *Mr. John W. Ross* and *Messrs. Glover & Shepley* for the defendant in error.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This is an action brought to recover the amount due on certain coupons attached to bonds of Bates County, Mo., issued at the request and on account of Mount Pleasant Township in said county, in payment of a subscription, on behalf of the township, to the capital stock of the Lexington, Lake, and Gulf Railroad Company. The subscription was made under a law of Missouri, called the "Township Aid Act," passed in 1868; by which, on the application of twenty-five tax-payers and residents of any township, for election purposes, in any

county, the County Court may order an election to be held in such township to determine whether and on what terms a subscription to any railroad to be built in or near the township shall be made; and if two-thirds of the qualified voters of the township, voting at such election, are in favor of the subscription, the County Court shall make it in behalf of the township, and, if bonds are proposed to pay the subscription, the court shall issue such bonds in the name of the county, but to be provided for by the township. It is contended that this law is repugnant to the fourteenth section of article 11 of the Constitution of Missouri, adopted in 1865; by which it is declared that " the general assembly shall not authorize any *county, city, or town* to become a stockholder in, or to loan its credit to, any company, association, or corporation, unless two-thirds of the qualified voters of such county, city, or town, at a regular or special election to be held therein, shall assent thereto." Now, the law of 1868 only requires the assent of two-thirds of the qualified voters who vote at such election. This is certainly a broad difference; and if the constitutional restriction extends, by implication, to townships, as well as to counties, cities, and towns, an election not conforming to the requirements of the constitution would be invalid and confer no authority to make a subscription. The petition in this case only alleges that two-thirds of the qualified voters voting at the election voted in favor of the subscription; which does not satisfy the demands of the constitution. The question, therefore, arises, whether townships are within the restriction of the constitutional provision. A township is a different thing from a town in the organic law of Missouri; the latter being an incorporated municipality, the former only a geographical subdivision of a county. As said in the *State* v. *Linn County Court* (44 Mo. 510), " It has no power by itself to make independent contracts, or to become bound in its separate capacity. The law has not invested it with that power. It forms an integral part of the county, and the county to a certain extent controls and acts for it." That the framers of the constitution intended to require the assent of two-thirds of all the qualified voters of a " county, city, or town," as a prerequisite to a subscription to a railroad or other company, and did not intend the same thing with

regard to townships, seems almost absurd.   It was undoubtedly supposed that every case was provided for.   The thirteenth section of article 11 declared that the credit of the State should not be given or used in aid of corporations; the fourteenth section then imposes the restriction referred to with regard to counties, cities, and towns.   This specification embraced every political organization which could be supposed capable of making a subscription.   To contend that the mere subdivision of counties into townships enabled the legislature to defeat the constitutional provision, is to ignore the manifest intention and spirit of that instrument.   It cannot be possible that it was intended to restrict the legislature as to counties, and not to restrict it as to mere sectional portions of counties.   Had counties alone been mentioned, there might have been no restriction as to cities and towns; because they are separate and distinct organizations, corporate in character, and often clothed with legislative functions.   But in Missouri, in 1865, when the constitution was adopted, a township had no corporate character; but, as before stated, was a mere geographical section of a county, partitioned off for purposes of local convenience in the matter of elections and a few other things.   They had no power to act as corporate bodies.   If the legislature could clothe these geographical portions of a county with power to subscribe to stock companies at all, it certainly could not set at nought the constitutional requirement of the people's consent thereto.

The court below did not decide the case on this ground, probably in consequence of certain decisions of the State courts which were deemed inconsistent with it.   But we are not aware of any decisions of those courts which hold that the constitutional restriction in question could be ignored with regard to townships, any more than with regard to counties, cities, or towns.

Another objection to the validity of the subscription for which the bonds were given in this case is, that the township voted a subscription to one company and the County Court subscribed to another.   This is sought to be justified on the ground that the former company became consolidated with another, thereby forming a third, to whose stock the subscription was made.   This consolidation was effected under a law of Missouri

authorizing consolidations, and declaring that the company formed from two companies should be entitled to all the powers, rights, privileges, and immunities which belong to either; and it is contended that this provision of the law justified the County Court in making the subscription, without further authority from the people of the township. But did not the authority cease by the extinction of the company voted for? No subscription had been made. No vested right had accrued to the company. The case of the *State* v. *Linn County Court*, *supra*, only decides, that, if the County Court refuses to issue bonds after making a subscription, a *mandamus* will lie to compel it to issue them. There the authority had been executed, and a right had become vested. But, so long as it remains unexecuted, the occurrence of any event which creates a revocation in law will extinguish the power. The extinction of the company in whose favor the subscription was authorized worked such a revocation. The law authorizing the consolidation of railroad companies does not change the law of attorney and constituent. It may transfer the vested rights of one railroad company to another, upon a consolidation being effected; but it does not continue in existence powers to subscribe for stock given by one person to another, which, by the general law, are extinguished by such a change. It does not profess to do so, and we think that it does not do so by implication.

As sufficient notice of these objections is contained in the recitals of the bonds themselves to put the holder on inquiry, we think that there was no error in the judgment of the Circuit Court.                                   *Judgment affirmed.*