## BATES COUNTY *v.* WINTERS & Another.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF MISSOURI.

Argued November 12, 1884.—Decided November 24, 1884.

A vote by a County Court in Missouri subscribing to the capital stock of a railroad company on certain conditions named in the vote, and directing a designated agent to make the subscription on the stock books of the company, and to copy the conditions in full thereon ; and a presentation of the subscription and of the conditions in writing by the agent in person to the directors at a directors' meeting ; and the acceptance of them by the board with a direction that the same be spread upon the record books of the company, constituted a subscription to the stock, although no actual subscription was made by the agent personally on the stock books.

In Missouri the consolidation of two or more railroad companies organized under the general law does not avoid subscriptions made to the stock of either, or invalidate the delivery of municipal bonds to the consolidated company in payment of such subscriptions.

This was a suit to recover on bonds issued by the plain-

tiff in error in payment of a subscription to the stock of a railroad company. The facts are stated in the opinion.

*Mr. G. G. Vest, Mr. John R. Shepley* and *Mr. John M. Glover* for plaintiff in error submitted on their briefs.

*Mr. T. J. Skinker* and *Mr. John B. Henderson* for defendants in error.

Mr. Chief Justice Waite delivered the opinion of the court.

This case was before this court at the October Term, 1877, and is reported as *County of Bates* v. *Winters*, 97 U. S. 83. It came up then on a special finding of facts, and the judgment below was reversed because it did not appear that the County Court had actually subscribed to the capital stock of the Lexington, Chillicothe and Gulf Railroad Company before the consolidation. Instead, however, of directing a judgment to be entered in favor of the county on those findings, as would have been the proper practice in the absence of any showing to the contrary, *Fort Scott* v. *Hickman, ante*, 150, a new trial, "according to the views expressed in the opinion," was ordered. We must presume that this was done for sufficient reasons. In the findings then presented the order of the County Court for the subscription, and the appointment of Betz to make the subscription on the books of the company, are set forth substantially as in those which are now before us. The same is true of what was done by Betz, at the meeting of the directors of the company, when he presented the copy of the record of the proceedings of the County Court, and the directors refused to allow him to withdraw his papers. His presence at the later meeting was also stated, as well as his final report to the County Court, and the action of the court thereon. The ground of the reversal is apparent from the following extract from the opinion of the court (p. 90), which was delivered by Mr. Justice Hunt:

"The County Court did not intend their action in June, 1870, to be final, and did not understand that a subscription was thereby completed. Their vote was a declaration that

the power to subscribe should be exercised, and was an authority to their agent to perfect a contract with the railroad company on the conditions set forth. No acceptance was made by the railroad company, no notice of acceptance was given, nor was there any act or fact which afforded a pretext for saying that the railroad company was bound by the contract of subscription. While it refused to allow the agent to withdraw his evidence of authority, it said nothing and did nothing to indicate that the minds of the parties had met upon the terms of a subscription. The County Court was precise and particular in requiring those conditions to be copied in full on the books of the company, as the conditions on which the subscriptions were made; and there could be no mutual contract until the railroad company assented, on its part, to those conditions."

In considering what was necessary to complete a valid subscription, the cases of *Nugent* v. *The Supervisors*, 19 Wall. 241, and *County of Moultrie* v. *Rockingham Savings Bank*, 92 U. S. 631, were cited, and the rule upon that subject as recognized in those cases was in all respects approved. That rule may be stated thus: An actual manual subscription on the books of a railroad company is not indispensably necessary to bind a municipality as a subscriber to the capital stock. If the body or agency having authority to make such a subscription passes an ordinance or resolution to the effect that it does thereby, in the name and on behalf of the municipality, subscribe a specified amount of stock, and presents a copy of that ordinance or resolution to the company for acceptance as a subscription, and the company does, in fact, accept, and notifies the municipality, or its proper agent, to that effect, the contract of subscription is complete, and binds the parties according to its terms.

From the findings in this case on the new trial it appears that the County Court passed an order " that the sum of ninety thousand dollars be, and the same is hereby, subscribed to the capital stock of the Lexington, Chillicothe & Gulf R. R. Company in the name and in behalf of Mount Pleasant Township, . . . subject to and in pursuance of all the terms, restrictions, conditions, and limitations of the petition of the tax-pay-

ers and residents;" and it at the same time authorized and directed Betz, who was the agent of the county to represent its interest in the company, to make the subscription on the stock books of the company, and in making the subscription to have copied in full the orders of the court of the 5th of April, 1870, as the conditions on which the same was made. As was very properly said when the case was here before, this order " was not intended to be final and self-executing." It needed an acceptance by the company to make it complete and binding as a subscription. On the new trial such an acceptance was shown, and in the findings then made it appears that Betz was present, for the purpose of making the subscription, at a meeting of the directors of the company on the 17th of June, 1870; that he presented to the board *for acceptance* a copy of the record of the proceedings of the County Court at the meeting on the 5th of April, and at the meeting when the subscription was ordered and he was directed to make it on the books of the company. Upon the presentation of these orders of the County Court they were read, and, after the reading, "were ordered by the board to be spread upon the record books of this company, and, on motion, the subscriptions made and specified in the . . . orders to the capital stock of the Lexington, Chillicothe & Gulf R. R. Co. were accepted by the board of directors of the said company." At the same time, by order of the directors, the secretary indorsed on the back of the papers " Filed and accepted June 17, 1870." It is difficult to see what more was necessary to bind the parties. Undoubtedly, if there had been at that time any book prepared in which subscriptions were to be made, Betz would have entered the subscription of the County Court in that book in proper form. But what he did was in its legal effect the same. He presented the action of the County Court in respect to the subscription for acceptance. That action was in the form of a present subscription upon certain conditions, and in his presence it was, when presented, formally accepted by a resolution of the directors as and for a subscription to the capital stock of the company. We say it was done in the presence of the agent. That is the fair inference from the record. The finding is that Betz went

on the 14th of June to make the subscription. The meeting of the directors was held on the 17th of that month, and the minutes show that he presented the papers from the County Court at that meeting. He was also appointed at that time to act as the agent of the company in obtaining municipal subscriptions. According to the minutes the orders of the County Court were read on their presentation, and at once, on motion, accepted as a subscription made. It also appears from the findings that another meeting of the directors was held on the 25th of August, at which Betz was present. At this meeting the minutes of the preceding meeting, which was presumably that of the 17th of June, were read and approved. Those minutes contained at length the orders of the County Court which had been presented by Betz, and the acceptance thereof by the board.

If the minutes of the board are correct, and it does not appear that any attempt was made to impeach them, "the minds of the parties met" on the 17th of June, and the county subscribed $90,000 to the capital stock of the Lexington, Chillicothe & Gulf Company, before the consolidation, on certain conditions, and the subscription received the formal acceptance of the company. It is undoubtedly true that Betz, as well as the county, supposed that an actual subscription on the books was necessary, and that he afterwards went to the office of the company to make it, and while there, for reasons satisfactory to himself, concluded not to do so. All these facts, save, perhaps, the action of the directors on the 17th of June, he reported to the County Court, and the court approved what he had done; but supposing something more was necessary to complete the subscription, another agent was appointed for that purpose, who finally made a formal subscription to the stock of the consolidated company. That, however, did not avoid the subscription which had actually been made before. This court decided in *Harshman* v. *Bates County*, 92 U. S. 569, and *County of Bates* v. *Winters*, supra, that this last subscription was invalid, but never until the last trial of this case has it been shown that another and a valid subscription had been made at the earlier date which rendered another unnecessary. The

former decisions have all been upon the assumption that the last was the only subscription ever made, and as it was made to the consolidated company, when the vote only authorized a subscription to the Lexington, Chillicothe & Gulf Company, it was held to be inoperative and not binding on the township for which the court was acting as agent.

As Betz, the agent of the County Court, was present at the meeting when the subscription was made and accepted, no other notice of the acceptance of the subscription was necessary. He was present as the agent of the County Court, and notice to him was notice to the court. The case stands in this particular precisely as it would if Betz had in form subscribed to the stock on the books of the company, and in making such subscription had copied in full, as he was instructed to do, the orders of the County Court. The acceptance of such a subscription from him by the company would certainly be enough. No further notice of acceptance was required. As Betz was authorized to make the subscription, he was authorized to receive notice of its acceptance. What was in fact done amounted in law to the making of a valid subscription by him for the County Court and its acceptance in his presence by the company.

As the Lexington, Chillicothe and Gulf Company was organized under the general railroad law of Missouri, which authorized consolidations, the subsequent consolidation of that company with another organized under the same law did not avoid the subscription which was made to its stock on the 17th of June, and the bonds in payment of the subscription were properly delivered to the consolidated company. That has been many times decided. *New Buffalo* v. *Iron Co.*, 105 U. S. 73, and the cases there cited.

*The judgment is affirmed.*