### SAGE et al. v. FARGO TP.

(Circuit Court of Appeals, Eighth Circuit. March 4, 1901.)

No. 1,426.

1. MUNICIPAL BONDS—POWER OF TOWNSHIP TO ISSUE—KANSAS STATUTE.

Under Laws Kan. 1886, p. 123, relating to the organization of new counties, which provided that no bonds of any kind should be issued by any county organized thereunder, or by any subdivision thereof, within one year after such organization, and which was amended by Laws 1887, p. 186, so as to read that "no bonds * * * shall be voted for and issued by any county or township within one year after the organization of such new county under the provisions of this act," a township had no power to vote upon the issuance of bonds within a year after the organization of the county, and railroad aid bonds issued pursuant to a vote at an election held within a year after the organization of the county are void, although not issued until after the expiration of such year, and, where the date of the election appears upon their face, all purchasers are chargeable with notice of their invalidity.

2. SAME—VOID BONDS—ACTS OF RATIFICATION.

Municipal bonds, which were void from the beginning because of want of power in the municipality to issue them, cannot be validated by any subsequent act of ratification or estoppel.

In Error to the Circuit Court of the United States for the District of Kansas.

O. H. Bentley and Rodolph Hatfield, for plaintiffs in error.
S. S. Ashbaugh, for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and ADAMS, District Judge.

ADAMS, District Judge. This was a suit instituted by the plaintiffs in error to recover from the defendant in error upon certain coupons representing accrued interest on certain bonds held by the plaintiffs, and alleged to have been duly issued by Cimarron township, the predecessor in name of the defendant, Fargo township, in Seward county, Kan. The answer disclosed that the bonds from which the coupons were cut were issued in satisfaction of a subscription by the township to the capital stock of the Chicago, Kansas & Nebraska Railway Company, which proposed to build a railroad into and

through the township; and that the election required by the railroad aid laws of Kansas (section 1283 et seq., Gen. St. 1889) to determine whether the subscription should be made and the bonds issued to pay the same was held, and the proposition to that effect voted upon, within one year after the temporary organization of Seward county, which occurred July 3, 1886, in violation of the provisions of the act of March 11, 1887 (section 1577, Gen. St. 1889). The answer also disclosed that the bonds issued recited on their face that they were so issued pursuant to the authority of a special election held on March 29, 1887. A demurrer interposed to this answer was overruled by the trial court, and judgment rendered in favor of the defendant.

Counsel for plaintiffs in error contend that this answer states no defense. They concede that the act of March 11, 1887, relating to the organization of new counties, is applicable to the case; but urge that because the bonds were actually executed and delivered to the railway company on April 2, 1888, more than one year after the date of the organization of the county, the mere fact that the election which authorized their issue was held within a year after such organization creates no legal barrier against their right of recovery. They contend that this was, at the worst, a mere irregularity in unessential detail, and that the issue of the bonds, after the year had elapsed, cured the defect or irregularity occurring in the preliminary step.

This argument, in our opinion, is not sound. The railroad aid laws of Kansas, supra, enable any organized municipal township, on compliance with certain prerequisite conditions, to subscribe for capital stock of any railroad company proposing to construct a railway through or into such township, and to issue bonds in payment of such subscription. The act of February 23, 1886 (Laws Kan. 1886, p. 123), relating to the organization of new counties, provided a method for organizing a county, but contained a specific provision as follows: "That no bonds of any kind shall be issued by any county, township, or school district within one year after the organization of such new county, under the provisions of this act." The last-mentioned act was amended by the act of March 11, 1887. Laws Kan. 1887, p. 186. This amended act, after providing a scheme for the organization of the county and the appointment of county commissioners and other officers, as therein stated, enacts as follows:

"And from and after the qualification of the county officers appointed under this act, the said county shall be deemed to be duly organized: provided, that no bonds, except for the erection and furnishing of school houses shall be voted for and issued by any county, or township, within one year after the organization of such new county under the provisions of this act."

The question presented by the record in this case is whether, under the Laws of Kansas, supra, Seward county, or Cimarron township within that county, was a duly-organized county or township, for the purpose of voting for the issue of bonds in question, when the same was done.

The act of 1886, which contained the proviso preventing the issue of bonds within one year after the organization of the county, in the mind of the legislature of the state required amendment, and

the act of 1887 was passed inserting a prohibition, not only against the issue of bonds, but also against their authorization by a vote of the people. The legislature must be presumed to have intended something by this additional prohibition, and the language employed is plain and clear to the effect that bonds could neither be voted for nor issued within a year after the organization of the county. This statute has been construed by the supreme court of Kansas to mean that the organization contemplated by it is only a temporary or provisional one, for special and limited purposes, not including the purpose of authorizing the issue of bonds like those involved in this case. State v. Commissioners of Haskell Co., 40 Kan. 65, 19 Pac. 362. It is there said: "The legislature has, in effect, said that when the temporary officers appointed by the governor under the act relating to the organization of new counties have qualified, the county shall be deemed to be duly organized except for certain purposes, including the voting and issuing of that kind of bonds" which were in that case and are in this case in controversy. The doctrine of that case was approved by this court in the case of Coffin v. Board, 6 C. C. A. 288, 57 Fed. 137. In the last-mentioned case it is held, in substance and effect, that the addition of the words "voted for," found in the proviso of the act of 1887, had the effect of further restricting the power of newly-organized counties, so that they could not only not issue bonds within one year after organization, but could not take the preliminary step of voting for them within that year. Upon the authority of this case, from which we see no reason to depart, it must be held that Seward county, on March 29, 1887, when the vote was taken in Cimarron township to make the subscription and issue the bonds in question, had no such organized existence as enabled it or any of its townships to take the preliminary step of voting for an issue of bonds like those now in controversy. It follows that there was no power in Cimarron township to vote, and thereby contract, for the issue of bonds in question when it undertook to do so, and, in the absence of such fundamental power, the attempt to exercise it is of no avail, and the bonds resulting from such attempt are illegal and void. This conclusion renders it unnecessary to give any consideration to the argument that the township, by the divers subsequent acts of its officers and agents in paying interest for some years on the bonds, is estopped from now asserting their invalidity.

The bonds, for want of power in the township to contract for them, were wholly void and of no legal effect from the beginning, and the township is not estopped from asserting their invalidity by reason of any of the subsequent acts of its municipal officers or agents or by reason of any supposed ratification by them. Central Transp. Co. v. Pullman's Palace-Car Co., 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55, and cases there cited; Marsh v. Fulton Co., 10 Wall. 676, 19 L. Ed. 1040. The bonds contain on their face the recital that they were issued pursuant to the authority of a special election held on March 29, 1887. The act of March 11, 1887, provides that this election could not be held within one year from the date of the organization of the county. Of all this, as well as of the date

107 F.—25

of organization, the plaintiff was bound to take notice. Coffin v. Board, supra, and cases cited; McClure v. Oxford Tp., 94 U. S. 429, 24 L. Ed. 129. Accordingly, if this were not a case of utter want of power, and were one in which the good faith of the purchasers could be considered, they are clearly shown to have had knowledge of the invalidity of the bonds when they purchased them. The judgment is affirmed.